**In re Theodis GARTH, Sr., Debtor.**

**Bankruptcy No. 87 B 05806.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Aug. 4, 1989.

Craig Phelps, Chicago, Ill., Chapter 13 Standing Trustee.

James M. Thomas, Asst. Corp.. Counsel, Chicago, Ill., for Chicago Water Dept.

Edward J. Rosewell, Cook County Treasurer, Ex–Officio County Collector, Chicago, Ill., for Cook County Treas.

Theodora W. Weston, St. Louis, Mo., for debtor.

James E. O'Neal, Theodis Garth, Sr., Juanita and Johnny White, Chicago, Ill., for Central Equity Corp.

### MEMORANDUM OPINION

RONALD S. BARLIANT, Bankruptcy Judge.

The Debtor in this Chapter 13 case attempted to redeem his property after it was sold at a pre-petition real estate tax sale. Central Equity Corp., the tax purchaser, contends that the attempted redemption was ineffective and, since the redemption period has now expired, that it is entitled to a tax deed. The matter is before the Court on the Debtor's motion to enjoin the Illinois taxing authorities from transferring the property to the tax purchaser. The Court must decide whether the Debtor's attempts to redeem were effective in spite of the Debtor's admitted failure to strictly comply with the redemption statute. The parties have submitted this proceeding on stipulated facts. The Court finds that the Debtor's attempted redemptions were made in good faith and substantially complied with the statute and, therefore, were effective under Illinois law. The Court further finds that Central Equity will not be injured if the remaining cost of redemption plus interest is paid by the Debtor. Accordingly, Central Equity will not be permitted to proceed in state court for issuance of a tax deed.

### Stipulated Facts

1) The Debtor's property, located at 8043 South Eberhart Avenue in Chicago, Illinois was sold at a tax sale on December 27, 1985 for delinquent 1984 real estate taxes, interest and costs totaling $1,708.74. A certificate of purchase was issued to Central Equity Corp., the tax purchaser, on the same day.

2) The redemption period, which originally ran until December 27, 1987, was extended until December 27, 1988.

3) On January 16, 1987, Central Equity paid $1,868.28 for the 1985 taxes and interest on the Debtor's property.

4) On April 20, 1987, the Debtor filed his Chapter 13 petition.

5) On May 26, 1987, the Debtor received a notice from the County Clerk of Cook

County entitled "Estimate of Cost of Redemption." The notice instructed the Debtor to pay $2,279.63 to redeem his property. That redemption amount included only the 1984 taxes and the appropriate interest and fees. It is therefore clear that Central Equity's payment of the 1985 taxes and interest had not been posted by the County Clerk on the tax judgment, sale, redemption and forfeiture record.

6) On June 26, 1987, in accordance with the County Clerk's cost of redemption estimate, the Debtor paid $2,279.63 to the County Clerk and the Clerk issued a receipt entitled "Receipt for Redemption Deposit."

7) On September 1, 1987, an attorney for Central Equity sent a letter to the County Clerk's office advising it of the additional 1985 taxes and interest necessary to properly redeem the property.

8) In response to that letter, the County Clerk's office sent a letter, dated September 11, 1987, to the Debtor notifying him that payment of an additional $1,868.29 within two weeks was necessary to redeem the property.

9) On June 30, 1988 and July 24, 1988, the Debtor made payments totaling $2,027.80 to the Cook County Treasurer for the 1985 taxes and interest.

10) As of July 1, 1988, accrual of additional interest increased the redemption amount to $4,717.01. The Debtor had paid only a total of $4,307.43 toward the redemption of his property as of July 24, 1988.

11) The parties agree that the amount necessary to redeem the property as of the December 27, 1988, the last day of the extended redemption period, was $5,114.77.

### Conclusions of Law

The Debtor twice attempted to redeem his property. His first payment of $2,279.63 on June 26, 1987 to the Cook County Clerk satisfied the Clerk's estimate for cost of redemption. The payment was insufficient, however, because the tax purchaser paid the 1985 taxes, costs and interest, which were excluded from the County Clerk's estimate. The Debtor's second attempt was inadequate for two reasons.

First, the payments were made to the Cook County Treasurer rather than the Cook County Clerk as required by section 253 of the Illinois Revenue Act. Second, in July, 1988 when the payments were made to the Cook County Treasurer, the amount necessary to redeem the Debtor's property was $4,717.01. The Debtor's total payments toward redemption as of July, 1988, however, were only $4,307.43. For the reasons stated below, the Debtor's attempted redemptions substantially complied with the redemption statute and were, therefore, effective despite the Debtor's initial inadequate tender to the County Clerk and his subsequent payment to County Treasurer rather than the County Clerk.

Section 253 of the Illinois Revenue Act establishes the requirements for redemption. Ill.Rev.Stat. ch. 120 ¶ 734. The cost of redemption must be paid to the county clerk within the time set for redemption by the statute. The cost of redemption includes the amount for which the property was sold at the tax sale, any subsequent taxes paid, interest at a statutory rate, penalties and fees. *Id.*

In addition to setting forth the requirements for redemption, section 253 of the Illinois Revenue Act sets forth the duties of the County Clerk and the tax purchaser in the redemption process. That section states in pertinent part:

> [I]t is the duty of the county clerk to include in the certificate of deposit for redemption the amount of the subsequent taxes, special assessments, redemptions from subsequent forfeitures and tax sales, and fees of the registrar of titles and fees and costs of the clerk of the circuit court paid by the purchaser or holder of the tax certificate. The county clerk shall not be required to include [the amounts listed above] in his certificate for deposit of redemption, nor shall payment thereof be a charge on the land sold for taxes, unless the purchaser, assignee, or holder of the tax certificate of sale shall have filed and have posted by the county clerk on the tax judgment, sale, redemption and forfeiture record, not less than 30 days prior to the expira-

tion of the period of redemption, an official, original or duplicate receipt for the payment of the [additional amounts paid by the tax purchaser].

Ill.Rev.Stat. ch. 120 ¶ 734. In other words, if the tax purchaser made additional payments of taxes, interest, costs or fees for the property after its purchase at the tax sale, it is the tax purchaser's duty to present receipts for the additional payments to the County Clerk and have the County Clerk post such payments on the official records. It is the duty of the County Clerk to post such payments once they are reported by the tax purchaser. If the additional payments are not reported by the tax purchaser and posted by the County Clerk before thirty days prior to the expiration of the expiration period, the cost of redemption will not include the additional payments.

When read in conjunction with section 252 of the Illinois Revenue Act, the purpose of the provisions becomes clear. Section 252 of the Illinois Revenue Act states that the records and books of the county clerk are prima facia evidence of the taxes, special assessments and cost of redemption on property.[1] Therefore, sections 252 and 253 of the Illinois Revenue Act establish an official public record of the cost of redemption on which a debtor may rely in his efforts to redeem his property.

Judge Wedoff's recent decision in *In re Wells Properties, Inc.*, 102 B.R. 685 (Bankr.N.D.Ill.1989) illustrates the application of Illinois' redemption requirements and an effective good faith redemption. There, the debtor attempted to redeem its commercial property within the extended redemption period by tendering the amount required by the Cook County Clerk in its estimate for the cost of redemption. The County Clerk accepted the tendered pay-

ment and issued receipts to the debtor's representative. The County Clerk, however, miscalculated the cost of redemption in its estimate by the amount of interest that accrued between the end of the original redemption period and the payment date which was within the extended redemption period. After a thorough discussion of Illinois' redemption requirements, the court found that the debtor's attempted redemption was made in good faith and was, therefore, effective. The tax purchaser's motion to proceed with its state court action for issuance of a tax deed was denied, provided that the debtor paid the accrued interest.

Noting the well settled principle that redemption is looked on with favor and the redemption laws are given liberal construction so long as the tax purchaser is not injured,[2] the court in *Well Properties*, stated:

> [T]here appears to be a well-established rule in Illinois that if a redemption of property from a tax sale is attempted in good faith by the tender of the amount required by the county clerk, then an insufficiency in the amount will not prevent the redemption from being effective, even if the party attempting redemption was aware of the facts that would have indicated the correct amount.

*Wells Properties*, at 697. The court also cited *Gage v. Scales*, 100 Ill. 218 (1881) ("Here it is apparent that the redemption was made in perfectly good faith. The money was paid to the proper officer, and the amount required by him, in the full belief that the sum paid was all that was necessary to redeem the land from the sale. We think that the attempted redemption was sufficient to authorize a court of equity to grant relief against the mistake of the clerk.") *Wells Properties*, at 696.

---

**1.** Section 252 of the Illinois Revenue Act provides:

> The books and records belonging to the office of the county clerk, or copies thereof, certified by said clerk, shall be deemed prima facie evidence to prove the sale of any land or lot for taxes or special assessments, the redemption of the same, or payment of taxes or special assessments thereon.

Ill.Rev.Stat. ch. 120 ¶ 733.

**2.** Citing *Mohr v. Sibthorp*, 395 Ill. 418, 424, 69 N.E.2d 487, 490 (1946) ("[R]edemption, although a statutory privilege and to be exercised in substantial compliance with the statute, is nevertheless looked upon with favor and unless injury is to result to the purchaser at the sale a liberal construction will be given redemption laws.")

Applying the edict of the statute and the holding in *Wells Properties* to the facts of the case at bar, it is clear that the Debtor's first attempt to redeem his property was made in good faith and in substantial compliance with the statute. The Debtor made his first attempt to redeem his property one month after receiving the Cook County Clerk's estimate of redemption and within the redemption period. Through no fault of his own, however, the additional taxes and interest paid by Central Equity in January, 1987 had not been posted on the Cook County Clerk's records by June 26, 1987. It is clear that neither the County Clerk nor Central Equity had fulfilled its duty under section 253 of the Illinois Revenue Act with respect to posting the additional payments when the Debtor made his first attempt to redeem the property. Although Central Equity had until 30 days before the expiration of the redemption period to have the County Clerk post the additional payments, its duty had not yet been performed on June 26, 1987 when the Debtor first attempted redemption. The Debtor properly relied on the County Clerk's representation that the cost of redemption was $2,279.63 and he paid that amount. *See Wells Properties, Inc.*, at 696. Had the County Clerk's records properly reflected the additional payments for 1985 taxes, the Debtor would have been informed of the increased redemption amount and would have had an opportunity to fully redeem the property at that time. The Debtor's initial attempt to redeem was a good faith tender of the amount required by the County Clerk and was, therefore, an effective redemption of the property.[3]

The Debtor's second attempt to redeem his property is further evidence of his good faith. Although the attempted redemption was not made within two weeks as urged by the County Clerk's letter, the payment was made within the extended redemption period, albeit to the wrong county official. As mentioned, the payments to the Cook County Treasurer totalled approximately $409 less than the correct redemption amount. The County Clerk's September 11, 1987 letter to the Debtor indicated that the correct redemption costs were posted in the County Clerk's records at the time of the Debtor's payments to the County Treasurer. Therefore, had the Debtor tendered the July, 1988 payments to the proper county office (the clerk's office), the $409 deficiency would have been brought to his attention. Since the good faith tender of insufficient funds may nevertheless result in an effective redemption, the question then becomes whether a good faith tender to the wrong county official may result in an effective redemption.

In Illinois, although section 253 of the Illinois Revenue Act provides for payment to the county clerk, it is clear that a debtor's redemption payment to the county treasurer, rather than the county clerk, does not affect the validity of the redemption. *In the Matter of the Application of DuPage County Collector*, 84 Ill.App.3d 506, 39 Ill.Dec. 890, 405 N.E.2d 869 (2d Dist.1980). In *DuPage County Collector*, the tax delinquent's redemption payment was mailed to the DuPage County Treasurer and post-marked on the last day of the redemption period. After the redemption period had expired, the payment was received by the DuPage County Clerk's office from the County Treasurer's office. In light of evidence that redemption checks were generally made payable to the "County Collector" and that pursuant to Ill.Rev. Stat. ch. 120 ¶ 657, the county treasurer is, *ex-officio*, the county collector, the court held that failure to strictly comply with the statute by making payment to the county clerk did not effect the otherwise valid redemption. *See also Littler v. The Peo-*

---

**3.** The effectiveness of the Debtor's first attempted redemption is further evidenced by the Cook County Clerk's September 11, 1987 letter. The following is printed in bold print at the bottom of the letter: "IT IS IMPERATIVE THAT YOU REDEEM WITHIN TWO WEEKS OR YOUR ORIGINAL REDEMPTION MAY BE EXPUNGED." It would only be necessary to expunge the redemption if the redemption were effective in the first place. In addition, a proceeding to expunge the redemption is an affirmative act that is subject to the automatic stat of 11 U.S.C. § 362. The parties, however, failed to stipulate that the Debtor's first payment to the Cook County Clerk was recorded in the official records as a redemption.

*ple*, 43 Ill. 188, 192–93 (1867) ("[P]ayment of the redemption money to the master, who made the sale, or to any officer of the law who, by his official bond, is bound for it, is always good payment. This is true ... when the person redeeming is the judgment debtor").

Central Equity will not be injured if the Debtor pays an additional $807.34 for the redemption of his property. (That is the difference between the amount the Debtor has paid and the amount that should have been paid by the end of the redemption period.) Upon that payment to the Cook County Clerk within 30 days, the Clerk and Central Equity will take such action as is necessary to effect the redemption of the property.

An Order will be entered accordingly.

## ORDER

The Court having considered the Debtor's Motion for Preliminary Injunction, Motion for Sanctions for Wilful Violation of Automatic Stay, Motion to Disallow/Adjust Claims, and Motion for Subrogation and Equitable Lien or Preferred Status Claim, in all the pleadings, stipulation of facts, and memoranda filed in connection therewith,

IT IS ORDERED AS FOLLOWS:

1. For the reasons set forth in the Memorandum Opinion filed herewith, the Debtor's Motion for Injunctive Relief with respect to the real property located at 8043 South Eberhart, Chicago, Illinois and the action for a tax deed pending in the Circuit Court of Cook County, Illinois, 80–CO–TD–1976, is granted on the following conditions:

a. The Debtor shall pay $807.34 to the County Clerk of Cook County, Illinois within 30 days from the entry of this Order.

b. Upon said payment, the property will be deemed to have been redeemed from the tax sale of December 27, 1985, which is the subject of the action for a tax deed identified above, and the County Clerk and Central Equity Corp. shall take such action as may be necessary to effect that redemption.

2. All other relief requested by the Debtor is denied.